IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| IN RE: | : | CHAPTER THIRTEEN |
| --- | --- | --- |
| | : | |
| JOSEPH A. VIDAL, | : | BANKRUPTCY NO.: 5-08-bk-51727 |
| | : | |
| DEBTOR | : | {**Nature of Proceeding**: Trustee's Objection |
| | : | to Seconded Amended Chapter 13 Plan} |

# OPINION

Joseph Vidal, the Debtor, filed a Chapter 13 bankruptcy on June 19, 2008. His income is above the applicable median family income. His monthly disposable income according to Form B22C, is negative $456.25. Nevertheless, he has offered to make payments of at least $393 in his plan for 36 months. The Chapter 13 Trustee, Charles DeHart, has objected to confirmation because the "Debtor's plan violates 11 U.S.C. § 1325(b)(1) in that the plan does not provide for the payment of all of the debtor(s)' projected disposable income for a minimum period of five years." The Trustee's computation of projected disposable income is based on the Debtor's Schedules I and J showing a positive income flow in the future, as opposed to Form B22C, the Debtor's historical income.

The facts are not in dispute. The issue before me is whether an above median income debtor with negative projected disposable income utilizing Form B22C must make payments over a five year term pursuant to § 1325(b)(1)(B). This question has been presented to many courts since the BAPCPA amendment was enacted in 2005 with inconsistent decisions and haphazard results.

Section 1325(b)((1)(B) provides:

**(b)(1)** If the trustee or the holder of an allowed unsecured claim objects to the

confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan–

**(A)** the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

**(B)** the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C.A. § 1325

"Applicable commitment period" is defined in § 1325(b)(4) as three years, or not less than five years if the debtor is above the state's median family income, as is true in this case.

The language utilized in the statute is simple enough until it is appreciated that the words "projected disposable income" and "applicable commitment period" are terms of art in the Bankruptcy Code complicating the actual application of the requirement to live facts.

Some courts have interpreted "projected disposable income" as being "forward-looking" based on predicted future income. *In re Turner,* 574 F.3d 349 (7thCir. 2009); *In re Nowlin*, 576 F.3d 258 (5thCir. 2009); *In re Lanning*, 380 B.R. 17, 20-21 (10thCir.BAP 2007). Other courts conclude that it is actually a projection of historical income and expense data. *In re Kagenveama*, 541 F.3d 868, 880 n.3 (9thCir. 2008), as well as an earlier decision of this Court, *In re Bardo*, 379 B.R. 524 (Bkrtcy.M.D.Pa. 2007).

There also exists a tension between those courts that view the applicable commitment period (five years for above-median-income debtors) as being a temporal requirement, mandating the debtor stay in bankruptcy for the full term.[1] *In re Frederickson,* 545 F.3d 652

---

[1] See, Evan J. Zucker, *The Applicable Commitment Period: A Debtor's Commitment to a Fixed Plan Length*, 15 Am. Bankr. Inst. L. Rev. 687, 687 (Winter 2007), for a discussion

(8thCir. 2008); *In re Fridley*, 380 B.R. 538 (9thCir.BAP 2007); *In re Meadows,* --- B.R. ---, 2009 WL 2514509 (Bkrtcy.N.D.Tex. 2009); *In re Brown*, 396 B.R. 551 (Bkrtcy.D.Colo. 2008); *In re Sanchez,* 394 B.R. 574 (Bkrtcy.D.Colo. 2008); *In re Anderson*, 383 B.R. 699 (Bkrtcy.S.D.Ohio 2008); *In re Heyward*, 386 B.R. 919 (Bkrtcy.S.D.Ga. 2008); *In re Nance,* 371 B.R. 358 (Bankr.S.D.Ill. 2007); *In re Slusher,* 359 B.R. 290 (Bankr.D.Nev. 2007), *In re Hylton*, 374 B.R. 579, (Bkrtcy.W.D.Va. 2007); *In re Pohl*, 2007 WL 1452019 (Bkrtcy.D.Kan. 2007); *In re Mullen*, 369 B.R. 25, (Bkrtcy.D.Or. 2007); In *re Schanuth,* 342 B.R. 601 (Bankr.W.D.Mo. 2006); *In re Dew*, 344 B.R. 655, 661 (Bankr.N.D.Ala. 2006); *In re Casey*, 356 B.R. 519, 527 (Bankr.E.D.Wash. 2006); *In re Cushman*, 350 B.R. 207, 212 (Bankr.D.S.C. 2006); *In re McGuire*, 342 B.R. 608, 615 (Bankr.W.D.Mo. 2006); and *In re Davis,* 348 B.R. 449 (Bankr.E.D.Mich. 2006).

Some courts conclude that the applicable commitment period is indeed a temporal time period but has no impact where there is no projected disposable income. *In re Kagenveama,* 541 F.3d 868 (9thCir. 2008); *In re Davis*, 392 B.R. 132 (Bankr.E.D.Pa.2008); *In re Alexander*, 344 B.R. 742 (Bankr.E.D.N.C.2006). The Collier Treatise supports this very conclusion, as follows:

> Another issue is whether the applicable commitment period has any relevance when the debtor's disposable income under section 1325(b) is zero or a negative number. Most courts have held that in such cases the debtor may propose a 36-month plan, since the amount required to be paid to unsecured creditors remains zero, whether the plan is 36 months or longer.
>
> In any event, a chapter 13 trustee is not compelled to demand a five-year plan from a debtor whose current monthly income is above the state median income, and probably should not do so in cases where the debtor is not barred from chapter 7 by the means test. The five-year requirement is not applicable

---

supporting the applicable commitment period as a temporal requirement.

      unless an objection to confirmation is filed, and it is hard to see how forcing such
      a debtor into chapter 7 is a desirable result for anyone.

8 Collier on Bankruptcy, ¶ 1325.08[5][d] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.)

Others view the commitment period to be more of a "multiplier" identifying the minimum amounts that must fund the plan. *In re Lopatka,* 400 B.R. 433 (Bankr.M.D.Pa. 2009); *In re Burrell*, 2009 WL 1851104 (Bankr.C.D.Ill. 2009); *In re Mathis,* 367 B.R. 629 (Bankr.N.D.Ill. 2007); *In re Swan,* 368 B.R. 12 (Bankr.N.D.Cal. 2007); *In re Brady,* 361 B.R. 765 (Bankr.D.N.J. 2007); *In re Lawson,* 361 B.R. 215, 220 (Bankr.D.Utah 2007); *In re Fuger,* 347 B.R. 94 (Bankr.D.Utah 2006); *In re Rush,* 387 B.R. 26 (Bkrtcy.W.D.Mo. 2008); and *In re McGillis*, 370 B.R. 720 (Bkrtcy.W.D.Mich. 2007).

It makes sense for those courts that interpret projected disposable income as a forward looking concept to view the applicable commitment period as a "mandatory minimum" ensuring that excess income be invested in the plan. Conversely, for those courts that see projected disposable income as fixed at historical levels, the applicable commitment period would logically be viewed as a multiplier by which total contribution to the plan could be measured.

An example of this relationship can be seen in *In re Frederickson*, 545 F.3d 652, 656 (8thCir. 2008), where the Eighth Circuit Court of Appeals first determined that "projected disposal income" was a forward-looking concept and held that the "applicable commitment period" provided a temporal requirement because it would thus not lead to an "anomalous or absurd" result. *Id.* at 660.

Of course, the Ninth Circuit Court of Appeals may view the applicable commitment period differently since it concluded that projected disposable income was based on historical data. *In re Kagenveama*, 541 F.3d 868 (9thCir. 2008).

*Plain Meaning*

In interpreting a statute, much weight is given to the principle of statutory construction that the "plain meaning" of the words used should control, except in the "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enterprises*, 489 U.S. 235, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). Regardless of how a court computes projected disposable income, the source of that payment will typically be future ongoing income. Applying what we know to the section at issue, I will paraphrase, as follows: With the Trustee objecting, the plan must provide that Debtor's projected disposable income [a sum certain] to be received in the applicable commitment period [either three or five years] must be applied to make payments to unsecured creditors. Should I interpret projected disposable income based on historical figures, as I did in *In re Bardo*, 379 B.R. 524, 528 (Bankr.M.D.Pa. 2007), then it would be a negative number in this case, based on the computation set forth in Form B22C. If the Debtor commits at least that sum, albeit negative as it might be, paid monthly over a five year period, then the plan is confirmable. On the other hand, if projected disposable income is based on future estimates of income and expense, Schedules I and J, then it still becomes a definite dollar amount on confirmation day. The plan must still dedicate that sum certain as it might be paid through a plan over a five year period. Whether that sum is accumulated sooner than the applicable commitment period seems to be of no account and should not impact the decision to confirm. To emphasize, we are dealing here with requirements of confirmation, not discharge. Moreover, the Code does not seem to include a provision mandating a requirement that the Debtor's plan last a minimum length of time. If such were a requirement, one would think that it would be found in

§ 1322, where I find maximum time periods, but no minimums. 11 U.S.C. § 1322(d).

A significant number of courts have differed with this conclusion and the reasoning of those principle cases should be considered.

In *In re Frederickson*, the Eight Circuit Court of Appeals began its review by referencing the general rule that, when the "text is plain and does not lead to an absurd result, the sole function of the courts was to enforce the plain language of the statute." citing *Lamie v. U.S. Trustee,* 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004). The Eight Circuit Court of Appeals then cited to a concurring opinion of Justice Stevens of the Supreme Court that acknowledged it may be appropriate to consider "all available evidence of congressional intent rather than limit the analysis to the text of the statute. It would be wiser to acknowledge that it is always appropriate to consider all available evidence of Congress' true intent when interpreting its work product. Common sense is often more reliable than rote repetition of canons of statutory construction." *Koons Buick Pontiac GMC, Inc. v. Nigh,* 543 U.S. 50, 65-66, 125 S.Ct. 460, 470 (2004) (footnotes omitted). With this quote being at such variance with the plain meaning rule, the question immediately comes to mind whether a concurring opinion of the Supreme Court has precedential value. It has been suggested that, in order for a concurring opinion to have authoritative impact, the concurrence must be necessary to procure a numerical majority, and the legal rationale must be compatible with that of the majority. See Igor Kirman, *Standing Apart to be A Part: The Precedential Value of Supreme Court Concurring Opinions*, 95 Colum. L. Rev. 2083, 2104-5 (December, 1995). Justice Stevens' concurring opinion was unnecessary to securing a majority opinion and, thus, I conclude would not have a precedential effect.

Relying primarily on the rather significant split in opinions of other courts, the *Frederickson* Court concluded that the meaning of the legislation could not be very plain with such a diversity of decisions. Such rationale is of concern to me since it appears to beg the question by assuming the conclusion it should seek to establish. The *Frederickson* Court delved into legislative history to conclude that "above-median debtors pay the maximum they can afford" regardless of whether they have positive or negative disposable income. *In re Frederickson,* 545 F.2d at 659. It is that conclusion that incentivized the court into interpreting this BAPCPA provision to maximize payments to creditors and minimize economic benefits of bankruptcy to the debtor.

This Court, thus, must first decide whether the legislation is plain, and I will follow its directive; or whether it is plain, and I could better implement the will of Congress by massaging the statutory terms.

If I conclude that the applicable statutory provision is not plain, I am free to examine its legislative history in an attempt to achieve congressional intent.

I can fully understand why some courts have concluded that the legislation is not clear, thus allowing those courts to implement procedures consistent with its remaining terms. This is certainly authorized under the Court's powers under § 105 of the Code. Should I conclude, however, that the statute is clear and I would choose a different course than that indicated, then I would consciously have to disregard its impact in favor of enforcing the legislative purpose. This has been referred to as "purposivism." Lynne F. Riley and Maria C. Furlong, *BAPCPA and the "Plain Meaning" Paradox*, 2009 Ann. Surv. of Bankr. Law Part II § 1 (June, 2009). I, for one, fear this approach. Judges rarely perceive their own intentions as misdirected, but hardly

would I see myself as in step with the philosophical conclusions of sibling bankruptcy judges throughout the country.  For example, many of us who agree that the plain meaning rule should be applied to a given provision, would disagree with what exactly is that plain meaning.  Imagine if we looked past that so-called "plain meaning" in order to pursue the congressional purpose.  I believe the diversity of our positions would have a babelic effect on the statute.

As can be assumed, I am inclined to first determine if the solution to the inquiry before me can fairly arise out of the language of the statute.

According to § 1325(b)(1)(B), I am unable to confirm a 13 plan unless that plan provides that all of the "debtor's projected disposable income to be received in the applicable commitment period" is applied to prepetition unsecured debt.  As earlier indicated, in a previous case I have determined that the term projected disposable income references the net computed on Form B22C.  *In re Bardo, supra.*  In this case, the Form B22C net number is a negative figure.  For an above-median-income debtor, the applicable commitment period is five years.  The decision to confirm or not to confirm is obviously made before the end of the applicable commitment period, ergo, I would simply project the B22C figure over the five year period to determine whether the unsecured creditors are projected to receive that minimum amount prior to the conclusion of the proposed plan.  I see little ambiguity in that application which appears to comport with the letter of the legislation.  In this case, therefore, since the Debtor intends to pay significantly more money than the negative number calculated by multiplying disposable income over a five year period, I would overrule the objection.

In answer to those critics who raise the unfairness of allowing a debtor to retain post bankruptcy income exceeding their reasonable expenses, I need only point to the general

prepetition requirement that the plan be proposed in good faith. 11 U.S.C. § 1325(a)(3). I further direct attention to the postpetition tools set forth in § 1329 allowing postpetition modification of the debtor's plan for cause. Section 1329 of the Code specifically provides that the confirmed plan can be modified upon the request of the debtor, trustee, or holder of an unsecured claim. If during the life of the plan it becomes apparent that the plan payments do not fairly equate to the debtor's then present income after expenses, § 1329 is available to implement a modified plan, thus preventing a windfall in favor of the debtor. This is a point recognized by at least three circuit courts. *In re Waldron,* 536 F.3d 1239, 1243 (11thCir. 2008); *Barbosa v. Soloman*, 235 F.3d 31, 36-37 (1stCir. 2000); *Arnold v. Weast (In re Arnold)*, 869 F.2d 240, 242 (4thCir. 1989).

My independent analysis, together with the afore cited support from Collier, a leading bankruptcy treatise, convinces me that the Trustee's objection should be overruled.

My Order will follow.

Date:   October 12, 2009

John J. Thomas, Bankruptcy Judge
(CMS)
*This opinion is electronically signed and filed on the same date.*